IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GARY JAMELE SHUCKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-cv-01202-AGF |
| | ) |
| DANIEL RITTER, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Pro Se Plaintiff Gary Shucks has asserted claims against Defendant Daniel Ritter ("Officer Ritter") under 42 U.S.C. § 1983, alleging that Officer Ritter, in his individual capacity, engaged in excessive force when he tased Plaintiff while Plaintiff was a pretrial detainee at Phelps County Jail in Rolla, Missouri. The matter is now before the Court upon Officer Ritter's Motion for Summary Judgment. Doc. No. 21. For the reasons set forth below, Officer Ritter's motion will be granted.

## BACKGROUND

Viewing the evidence and all reasonable inferences in the light most favorable to Plaintiff, for purpose of the motion before the Court, the record establishes the following. On February 2, 2021, Plaintiff was booked as pretrial detainee at Phelps County Jail in Rolla, Missouri on federal drug and weapons charges. Doc. No. 23-1 at 1.

On July 4, 2021, at approximately 4:40 p.m., Plaintiff was involved in a physical altercation with another inmate. Doc. No. 23 at ¶ 4, Defendant's Statement of Material

Facts. At the time of the incident, Officer Ritter was a corrections officer at Phelps County Jail. Officer Ritter states that he was observing the F Pod via video feed from the jailers' officer when he observed Plaintiff and another inmate engaged in a physical altercation. Officer Ritter immediately notified the control tower via radio of the fight. He then left the office and entered the F Pod with Sergeant Timothy Alexander. Upon entering the pod, Officer Ritter gave both inmates a verbal command to stop fighting.[1] The parties dispute what happened next, and whether Plaintiff was still fighting when Officer Ritter deployed his taser.

In his complaint, Plaintiff contends that when the pod door opened, he ran for help and his hands were up in the air when Officer Ritter deployed his taser. Doc. No 1 at ¶ 5-7. In his opposition to summary judgment, Plaintiff contends that the video footage will show that Plaintiff was not fighting when Officer Ritter deployed his taser. Doc. No. 24. In his written grievance, submitted the day of the incident, Plaintiff contends that the fight was already broken up when the officers came into the pod, and he and the other inmate were already far away from each other when the officer tazed him. Doc. No. 23-1 at 8. In sum, Plaintiff argues that he was no longer fighting with the other inmate when Officer Ritter deployed his taser.

---

[1] These events are supported by the sworn affidavits of Officer Ritter (Doc. No. 23-1 at 2) and Sergeant Timothy Alexander (Doc. No. 23-1 at 5) as well Officer Ritter's incident report written the day of the incident (Doc. No. 23-1 at 4) and Sergeant Alexander's incident report, also written on the day of the incident. (Doc. No. 23-1 at 7). Plaintiff does not dispute any of these facts.

Conversely, Officer Ritter contends that Plaintiff did not obey his verbal command to stop fighting, so Plaintiff was still actively engaged in the fight when he deployed his taser. Doc. No. 23-1 at ¶¶ 6-7. Upon being struck by the taser, Plaintiff fell to the floor and both inmates stopped fighting. Plaintiff stood up on his own shortly after the taser was deployed, and Officer Ritter escorted him out of the pod. Plaintiff suffered an injury to his front tooth due to the fall and was given Tylenol and ice packs for the pain.

Due to Plaintiff's contentions in his opposition, that the video footage would prove he was not fighting when Officer Ritter deployed his taser, the Court asked Defendant to submit any video surveillance of the incident. Doc. No. 26. On May 1, 2023, Defendant submitted several videos of the incident.[2] Doc. No. 27. The contents of the videos are discussed in more detail below.

## ARGUMENT OF THE PARTIES

Defendant Ritter argues that he is entitled to qualified immunity, and he did not violate any of Plaintiff's clearly established rights, namely, he did not employ excessive force. Officer Ritter contends that the forced used against Plaintiff was reasonable because Plaintiff was presenting a serious security threat to the jail by engaging in physical violence with another inmate; he ordered Plaintiff to stop and only deployed his taser upon Plaintiff's failure to comply; he only deployed his taser once and did not deploy any force once Plaintiff became compliant; and Plaintiff immediately stood up after the deployment of the taser without assistance.

---

[2]   Defendant submitted 18 video clips, many of which were duplicative. Video "3746" and "3915" best captured the incident.

3

In opposition, Plaintiff contends that the video footage shows that he was not fighting when Officer Ritter entered the pod, thus Officer Ritter's use of force was excessive.[3] Additional facts and arguments are cited below as relevant to particular issues.

## DICUSSION

**Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden of demonstrating there are no genuine issues of material fact rests on the moving party, and we review the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015) (citation omitted). To avoid summary judgment, the nonmovant has the "burden of presenting evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in their favor." *Gregory v. City of Rogers, Ark.*, 974 F.2d 1006, 1010 (8th Cir. 1992) (citation omitted). The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). "Where the record taken as a

---

[3] Plaintiff's opposition is very brief, only one page in length, and does not comply with Local Rule 4.01. However, because Plaintiff is pro se, the Court will construe his opposition liberally. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

4

whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Combs v. Cordish Cos.*, 862 F.3d 671, 680 (8th Cir. 2017) (citation omitted).

**Video Surveillance Footage**

Plaintiff relies heavily on the video surveillance footage to support his arguments. All of the surveillance videos provided are low-resolution and without audio. Additionally, the video footage only captures certain angles of the incident. The videos show Plaintiff sitting at a table in the F pod when he is approached by another inmate. Plaintiff and the other inmate start fighting, and the fight continues for less than one minute. Plaintiff is facing away from the camera when he is struck with the taser from behind and falls to the ground. Notably, the video evidence does not capture Officer Ritter and Sergeant Alexander (the "Officers") entering the pod and does not show whether they issued a verbal warning. The Officers simply are not visible in the video footage until after Plaintiff is struck by the taser.

However, the video footage does contradict Plaintiff's version of events. The Court need not accept Plaintiff's versions of the facts on this summary judgment motion if the video evidence "conspicuously refutes and completely discredits" that version. *See Wallingford v. Olson*, 592 F.3d 888, 892-93 (8th Cir. 2010). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no

5

reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). It is patently clear that Plaintiff is not running toward the door asking for help when the officers enter, nor were his hands in the air when he was struck by the taser. The video surveillance conclusively shows that Plaintiff was still engaged in the fight, facing away from the officers, and facing towards the other inmate when he was struck by the taser. Because there is no audio, the video surveillance cannot definitively prove Officer Ritter's version of events, specifically with respect to his verbal warning. However Plaintiff does not appear to dispute that a verbal warning was given, rather he argues that he was not fighting when he was struck by the taser, which is refuted by the video footage.[4]

**Qualified Immunity**

"Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Burbridge v. City of St. Louis, Mo.*, 2

---

[4] Plaintiff's opposition states, "In the video it will show that I was not fighting when he entered the unit and tazed me as he claims as he entered and gave me a directive to stop fighting." Doc. No. 24 at 1. Plaintiff does not assert in his complaint, written grievance, or elsewhere, that Officer Ritter did not give a verbal warning. However, even if this statement were to be construed as Plaintiff disputing that Officer Ritter gave a verbal warning, Plaintiff has failed to substantiate such an allegation with specific facts or evidence in order to establish a genuine dispute of material fact. *See Fatemi v. White*, 775 F.3d 1022, 1040 (8th Cir. 2015) (explaining that to establish a genuine dispute of material fact, the nonmovant "may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in [his] favor.") (internal quotations omitted).

6

F.4th 774, 780 (8th Cir. 2021) (internal quotation omitted).  "Once a defense of qualified immunity is raised, a plaintiff must offer 'particularized' allegations of unconstitutional or illegal conduct."  *Conrod v. Davis*, 120 F.3d 92, 95 (8th Cir. 1997) (citation omitted). The Supreme Court has emphasized that "qualified immunity represents the norm," *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982), and its protections extend to "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

When analyzing qualified immunity claims, courts consider two crucial factors: (1) whether the alleged facts demonstrate that the public's official conduct violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the alleged misconduct.  *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right."  *Id.*  "A right is clearly established if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Mitchell v. Shearrer,* 729 F.3d 1070, 1076 (8th Cir. 2013) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  There is no requirement that "the very action in question has previously been held unlawful," but for an official action to violate a clearly established right, the unlawfulness of that action must be apparent in light of pre-existing law.  *Anderson*, 483 U.S. at 640.  "In other words, the right violated must have been established 'beyond debate.'"  *Mendoza v. United States Immigration & Customs Enforcement*, 849 F.3d 408, 417 (8th Cir. 2017) (citations omitted).  Clearly established law "should not be defined at a high level of generality," but instead "must be

7

'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (citations omitted). "The plaintiff bears the burden of proving that the law was clearly established." *Hess v. Ables*, 714 F.3d 1048, 1051 (8th Cir. 2013). If a defendant raises a qualified immunity defense in a summary judgment motion, "the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated a clearly established right." *Bishop v. Glazier*, 723 F.3d 957, 961 (8th Cir. 2013).

**Excessive Force**

Because Plaintiff was a pretrial detainee, Phelps County "concededly [could] detain him to ensure his presence at trial and [could] subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979). "Although 'the Eighth Amendment has no application' until there has been a 'formal adjudication of guilt,' the Fourteenth Amendment gives state pretrial detainees – just as the Fifth Amendment gives federal pretrial detainees – rights which are 'at least as great as the Eighth Amendment protections available to a convicted prisoner." *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (emphasis omitted) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). "[T]he Due Process clause prohibits *any* punishment of a pretrial detainee, be that punishment cruel-and-unusual or not." *Edwards v. Byrd*, 750 F.3d 728, 732 n.2 (8th Cir. 2014) (emphasis original).

8

In an Eighth Amendment excessive force case, "the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)).  To support an excessive force claim, a pretrial detainee must show that force was purposely or knowingly used against him and that such force was objectively unreasonable.  *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).  The reasonableness of a particular use of force depends on the totality of the circumstances.  Factors relevant in evaluating the reasonableness of the force used by the officer include: "the relationship between the need for use of force and the amount of force used; the extent of plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; whether the plaintiff was actively resisting."  *Id*. at 397; *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017).

The Eighth Circuit has held that "prisoners have a clearly established right to be free from a Taser shock or its equivalent in the absence of a security threat."  *Brown v. City of Golden Valley*, 574 F.3d 491, 500 (8th Cir. 2009).  "[P]recedent demonstrates that the use of a taser is justified 'when there was a concern for the safety of the institution, the jailers, and the inmates."  *Sutton v. Buchanan*, No. 1:18-CV-00063-JAR, 2022 WL 2208943, at *4 (E.D. Mo. June 21, 2022) (quoting *Brown*, 574 F.3d at 491).

Here, there was a legitimate concern for the safety of both Plaintiff and the other

9

inmate,[5] Officer Ritter issued a verbal warning, which was ignored by Plaintiff, and Officer Ritter deployed his taser only once, while Plaintiff was actively engaged in a physical fight. Officer Ritter did not deploy any force after Plaintiff became compliant. Further, Plaintiff stood up on his own within seconds of being struck by the taser, and while he did suffer injury to his front tooth, there is no evidence that this injury was severe or caused any permanent or lasting damage.

The "reasonableness of an officer's use of force [shall be evaluated] 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Brown*, 574 F.3d at 496 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989))." Assessing the actions of Officer Ritter from this perspective, the Court concludes that Officer Ritter's deployment of the taser did not constitute excessive force in violation of the due process clause. Plaintiff was unrestrained, posed a threat to the other inmate, and refused to comply with verbal orders. Considering the reasonable need for force, Officer Ritter's attempt to obtain compliance, and the limited injuries suffered by Plaintiff, the Court finds that Officer Ritter's actions were objectively reasonable as a matter of law. Additionally, Plaintiff's contentions that he was not fighting when Officer Ritter deployed his taser; that he and the other inmate were "far away from each other" when the Officers entered the pod; that he ran for help when the pod door opened; and that his hands were in the air when he was tasered are conclusively contradicted by the video footage. As such, Plaintiff has failed to demonstrate that there is a genuine issue

---

[5] Plaintiff was also considerably larger than the other inmate he was fighting which may have been a relevant factor in Officer Ritter's assessment of the threat.

10

for trial.  Accordingly, the Court will grant summary judgment in favor of Officer Ritter on Plaintiff's excessive use of force claim.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is **GRANTED**.  (Doc. No. 21).   All claims against all parties having been resolved, a separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 18th day of May, 2023.